Move to the third case this morning, Painter v. Illinois Department of Transportation. Thank you, Judge Caney, Richard Stegall, Judge Sykes, Judge Rover. I represent the plaintiff who was a long-time State of Illinois employee. She brought the action under a somewhat obscure provision of the Americans with Disabilities Act prohibiting inquiries or medical examinations on whether an individual has a disability unless it's shown to be job-related and required by business necessity. The IDOT is the employer, as Illinois has waived its 11th Amendment immunity, but I also brought a Rehabilitation Act complaint, claim. Judge Mills in the IDOT has the burden of proof of that. She was sent to five examinations in 13 months. Are her objections limited to the last two medical examinations, the ones conducted by She was not damaged by the earlier ones, Judge, as you've perceptively asked a good question, because the labor grievance resolved it, transferred her from traffic safety to day labor, and said that no reference could be made again to those examinations or the conduct in traffic safety. So you're correct. What we're looking at are the December examination of Dr. Killian, the decision to send out, and then a later one in May where she was sent out. I took the deposition of Stuart Hunt, who was her supervisor. He did not know who made the decision, nor could he give the reasons for the decision. There was a 10-page complaint from the only person that worked under Painter and worked with her, Michelle Kelly. Hunt was not sure if he relied on that or not. While Kelly was allowed... Regardless of who did or who did not, there seems to be extensive evidence that her behaviors were causing serious disruptions in the work life of her co-workers. So, I mean, is it your contempt that disruptions to other workers cannot be used to justify a medical examination? No, but it also has to be related to the job, and her job was, when she went to day labor, is these are the laborers we see on the highways. So in the summer, they're up to about 800, and Painter, with the assistance of Kelly, processed all the 800 applications, payroll, and did all that work for it, and then it went down in the winter to 30. There were about 10 other people doing other things in day labor. But look, I, you know, maybe she's technically fulfilling her own job duties, but it doesn't seem to me that she just repeats any of the core facts. She seems to concede that many co-workers reported her to be alarming, and that her behaviors were disruptive, and wouldn't that be sufficient to justify sending her for an exam, unless there is some evidence that the complaints by the co-workers were a sham? Well, Your Honor, the evidence that's objective that's there is she didn't have interaction with them. It is that she was working out front, and they'd pass her going to the restroom or someplace else that she did not work with them. And that was the significant objective fact that was never considered, and that's what the basis of the appeal is, is that, yeah, the other workers were having complaints about her. Well, why are they over with the processing of these day labor applicants for the workers that come in every year? They had other things to do. How much interaction could there possibly be when she's sitting at a desk processing these applications with Michelle Kelly? That is... Well, I thought that the complaints were a sham. I'm not saying they're a sham. I'm saying that given the limited exposure, that if they're doing their job, they should have had very limited exposure to her. What I'm saying is that those complaints could not have been significant because there wasn't sufficient time to be exposed to her. And of course, the other obvious response for a supervisor is, what are you talking about paying her for? You don't work with her. Stay away from her. And the other factor in this case that shows a significant violation is... And sending bizarre emails. I mean, even her union representative was afraid of her, reported her to the Illinois State Police. Which they found nothing. And of course, the union representative got removed for violation of his duties of representation for that. But what it comes back to is, her job function was to do these processing, and the burden is on the employer. And we never heard anything from Stout about exactly what the facts were. This came out over... And some of those problems, Your Honor, were with traffic safety, where she interacted with a lot of people. The actual problems she had with day labor were mainly limited to Michelle Kelly, because that's only who she dealt with. And the other factor is that as soon as the... As far as I can tell, I don't know who made what decision based on what facts, and it's their burden to establish that. They tried to save it with an affidavit, but I still didn't know that. And then the other factor is, the statute prohibits any inquiry or medical examination. Marie Malick Robinson testified that she, anytime she got any question about anybody,  Well, that's a statutory prohibited inquiry that the state of Illinois is violating regularly. The reason is understandable. She generally deals with employee assistance program, which is a cooperative, confidential thing. And so she's naturally being helpful, but that's an entirely different standard for what she's doing here. I've got a few minutes for rebuttal, unless there's anything else. Thank you. Thank you. Ms. Buell. Good morning, your honors. May it please the court. Assistant Attorney General Caitlin Buell on behalf of the defendant, Appa Lee, the Illinois Department of Transportation. Deanna Painter's behavior at the Department of Transportation inhibited the department's and created an unsettling and unsafe work environment for its employees. Ms. Buell, who made the decisions to send her for the relevant medical exam? Was it one person? Was it a committee? Do we know? It is a collective process, your honor. Mostly the process for fitness for duty examinations at the Department of Transportation starts with gathering employee statements. And those statements go through the supervisors and then on to the fitness for duty coordinator, Ms. Malik Robinson. And then the fitness for duty coordinator provides a statement to a medical review officer at the Department of Transportation. And that individual is a medical doctor. They can determine next steps, such as whether a fitness for duty examination is necessary or if there's some sort of reasonable accommodation. And it was the medical officer here who orders the examination. But it was mostly a collective process among the supervisor and the rest of the fitness for duty team at the department. And what were the employee complaints after the transfer? We have a lot of complaints about bizarre behavior before the transfer, but as I understand it, you were focusing on the two examinations by Dr. Killian, which occurred after her transfer within the department. Absolutely. So I would first like to point out that Dr. Killian's first examination was actually based on a referral from her second fitness for duty examination when she was still in the traffic safety division. And so at that point, Painter was yelling at her coworkers. She yelled at one until she cried. And she was angry and ranting. She told one employee that her house was possessed, then yelled at her, threw her hands in the air, and came towards her. After she was transferred to the day of the transfer. Ms. Buol, could you? I lost your lines. She told one employee that her house was possessed? Yes. And then what did you say? So on pages 1057 and 1051 of the record, the employee was told that her house was possessed. Then Painter began to yell at her. She threw her hands up in the air, and she actually came towards her and was angry and ranting. And that employee was so scared that after the incident, she asked a guard to walk her out at night. Once Painter was transferred to the day labor division, an employee reported that Painter was continuously yelling in the office. That employee on page 1102 of the record said that she was fearful of retribution.